**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**JOHN E. FITZGIBBONS,**

                                        **Plaintiff,**

              **v.**                                        **5:10-CV-1038**
                                                             **(FJS/ATB)**

**CITY OF OSWEGO, COUNTY OF**
**OSWEGO, JOHN DOE CORPORATIONS,**
**JOHN DOE INSURANCE COMPANIES,**
**and JOHN DOES,**

                                        **Defendants.**
_____

**APPEARANCES**                          **OF COUNSEL**

**KNAUF, SHAW LLP**                       **ALAN J. KNAUF, ESQ.**
1125 Crossroads Building                  **AMY L. REICHHART, ESQ.**
2 State Street
Rochester, New York 14614
Attorneys for Plaintiff

**LAW OFFICE OF GARY S. BOWITCH**         **GARY S. BOWITCH, ESQ.**
119 Washington Avenue
Albany, New York 12210
Attorneys for Defendant City of Oswego

**PETRONE & PETRONE P.C.**                **LORI E. PETRONE, ESQ.**
1624 Genesee Street
Utica, New York 13502
Attorneys for Defendant County of Oswego


**SCULLIN, Senior Judge**

**MEMORANDUM-DECISION AND ORDER**

## I. INTRODUCTION

Plaintiff John E. Fitzgibbons seeks past and future environmental investigation and remedial costs and an injunction requiring further investigation and cleanup of his property, which he claims Defendants have contaminated. Plaintiff filed his initial complaint on August 26, 2010. In lieu of filing an answer, Defendant County of Oswego (the "County Defendant") moved to dismiss the complaint in its entirety on January 18, 2011.[1] On March 22, 2011, Plaintiff filed papers in opposition thereto, which included a motion to amend the complaint.[2]

Plaintiff brings eleven causes of action against the County Defendant,[3] pursuant to (1) the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA") § 107, (2) the Resource Conservation and Recovery Act ("RCRA") § 7002(a)(1)(B), (3) New York Environmental Conservation Law ("ECL") Article 37, (4) negligence, (5) strict liability for ultrahazardous activity, (6) public nuisance, (7) restitution, (8) trespass, (9) private nuisance, (10) New York State Navigation Law § 181(5), and (11) New York State Navigation Law § 176(8).

---

[1] Since this motion is based on the sufficiency of the pleadings, the Court has drawn the following factual allegations from Plaintiff's proposed amended complaint.

[2] For reasons discussed *infra*, the Court grants Plaintiff leave to file and serve an amended complaint.

[3] Unless indicated otherwise, Plaintiff has made the same claims against the City of Oswego and the Doe Defendants. Plaintiff also asserted a twelfth cause of action, pursuant to New York State Navigation Law § 190, solely against the John Doe Insurance Companies. Defendant City of Oswego (the "City Defendant") filed an answer and cross-claim against the County Defendant on January 17, 2011. *See* Dkt. 17, City Defendant's Answer and Cross-Claim. In its cross-claim, the City Defendant alleges, among other things, that Plaintiff's injuries or damages were sustained, in whole or in part, as a result of the County Defendant's and/or the Doe Defendants' acts or omissions and that these damages are in no way attributable to the City Defendant. *See id.* at ¶¶ 122-124.

Upon identification of any John Does, John Doe Corporations, or John Doe Insurance

Companies, Plaintiff intends to seek to amend his complaint accordingly. *See* Dkt. No. 26, Exh.

A attached thereto, "Amended Complaint," at ¶ 13.

## II. BACKGROUND

Plaintiff is the owner of the allegedly contaminated property at issue, located on George

Street, in the City of Oswego, County of Oswego, and State of New York (the "George Street

Property"). *See* Amended Complaint at ¶¶ 1, 15. A landfill (the "Landfill") located adjacent to

the George Street Property, which the County Defendant acquired from Niagara Mohawk Power

Corporation ("NiMo") in or around 1975, has been used as a waste disposal facility since the

1940s. *See id.* at ¶¶ 16, 18.

According to Plaintiff, approximately 1.22 acres of the northeast portion of the George

Street Property (the "Trespass Area") were used as a portion of the Landfill during the 1960s and

1970s and hazardous wastes were dumped there. *See id.* at ¶¶ 2-3, 19. Plaintiff became aware of

this dumping of hazardous wastes in May of 2009.[4] *See id.* at ¶ 20. The Landfill, which the

County Defendant still owns and/or operates, continues to function as a transfer station (the

"Transfer Station") for municipal waste materials and construction and demolition debris and is

currently accepting metals, used oil, and dried paint. *See id.* at ¶¶ 21-22.

As a result of the dumping, the releases, and the contamination, the value of the George

---

[4] In his initial complaint, Plaintiff alleged that he had no knowledge of any dumping on
the George Street Property "until recently." *See* Dkt. 1, Complaint, at ¶ 18. The alleged
hazardous wastes and substances at issue include polychlorinated biphenyls, polynuclear
aromatic hydrocarbons, volatile organic compounds, semi-volatile organic compounds, metals,
pesticides, and other hazardous substances contained in municipal solid waste, and petroleum
and petroleum-based hydrocarbons. *See* Amended Complaint at ¶¶ 3, 23.

Street Property has diminished; furthermore, Plaintiff has undertaken environmental investigation and response actions and it will be necessary for Plaintiff to continue to incur additional costs to investigate, remove, remediate, clean up and respond to the contamination and wastes on the Property.  *See id.* at ¶¶ 3, 23, 30.

Currently before the Court are two motions: Defendant County of Oswego's motion to dismiss the complaint in its entirety and Plaintiff's cross-motion to amend the complaint and to strike the affidavits that Defendant County of Oswego submitted.

### III. DISCUSSION

**A.      Plaintiff's motion for leave to amend the complaint**

Plaintiff's proposed amended complaint is substantively nearly identical to his initial complaint, except that it addresses two alleged deficiencies that the County Defendant raised: (1) Plaintiff's failure to join a necessary party, NiMo, in his initial complaint and (2) Plaintiff's nonexistent or deficient notice of claim ("Notice of Claim").

Pursuant to Federal Rule of Civil Procedure 15(a), which governs a party's ability to amend its pleadings after responsive pleadings have been served, a court should liberally grant a party leave to amend its pleadings "when justice so requires." Fed. R. Civ. P. 15(a).  A court should only deny leave to amend "for such reasons as 'undue delay, bad faith, futility of the amendment, and perhaps most important, the resulting prejudice to the opposing party.'" *Richardson Greenshields Sec., Inc. v. Lau*, 825 F.2d 647, 653 n.6 (2d Cir. 1987) (quoting *State Teachers Retirement Bd. v. Fluor Corp.*, 654 F.2d 843, 856 (2d Cir. 1981)).  Further, "'[t]he rule in this Circuit . . . [is] to allow a party to amend its pleadings in the absence of a showing by the

[non-movant] of prejudice or bad faith.'"  *State v. Panex Indus., Inc.*, No. 94-CV-0400E(H), 1997

WL 128369, *2 (W.D.N.Y. Mar. 14, 1997) (quoting *Block v. First Blood Associates*, 988 F.2d

344, 350 (2nd Cir. 1993)).  The party opposing the requested relief has the burden of establishing

that granting leave to amend would be unduly prejudicial.  *See id.* (citing *Saxholm AS v. Dynal,*

*Inc.*, 938 F. Supp. 120, 123 (E.D.N.Y. 1996)).

     Given the early stage of this litigation and the fact that neither bad faith nor undue

prejudice can be shown, the Court grants Plaintiff leave to amend his complaint to add NiMo as a

defendant.  Next, with regard to the sufficiency of the Notice of Claim, Plaintiff attached a copy

of a purportedly timely and sufficient Notice of Claim to his proposed amended complaint.  *See*

Dkt. 26-3, Amended Complaint, Exh. B attached thereto, ("Notice of Claim").[5]

     County Law § 52 provides, in part, that

> [a]ny claim or notice of claim against a county for damage, injury
> or death, or for invasion of personal or property rights, of every
> name and nature . . . arising at law or in equity . . . alleged to have
> been caused or sustained in whole or in part by or because of any
> misfeasance, omission of duty, negligence or wrongful act on the
> part of the county . . . must be made and served in compliance with
> section fifty-e of the general municipal law. . . .

N.Y. County Law § 52.   A plaintiff is required to serve such Notice "within ninety days after the

claim arises[.]"  N.Y. Gen. Mun. Law § 50-e(1)(a).  Among other things, the Notice of Claim

must state the nature of the claim and "the time when, the place where and the manner in which

the claim arose[.]"  N.Y. Gen. Mun. Law § 50-e(2); *Phillipps v. N.Y. City Transit Auth.*, 68

A.D.3d 461, 462 (1st Dep't 2009) (quotation omitted).  The Notice need not provide that

information with "'literal nicety or exactness'"; rather, the test is whether the Notice provides

_____

     [5] The Notice is dated August 25, 2009.  *See* Notice of Claim.

facts sufficient to enable the defendant to investigate. *Phillips*, 68 A.D.3d at 462 (quotations

omitted). Further, the municipal defendant has "'an obligation to obtain the missing information

if that can be done with a *modicum of effort* rather than rejecting a notice of claim outright[.]'"

*Id.* (quotation omitted).

Here, Plaintiff's Notice of Claim identified the nature of the claim as, among other things,

> negligence, public nuisance, private nuisance, trespass and de facto
> taking and deprivation of property . . . as a result of . . . actions,
> omissions, and/or knowledge of . . . the County [Defendant],
> including utilizing Claimant's property . . . at Tax Parcel ID #
> 128.27-02-03, in the City of Oswego, County of Oswego and State
> of New York as a municipal landfill without a permit or the
> permission of Claimant, interfering with the use and/or value of the
> [George Street] Property, and causing contamination. Upon
> information and belief, the waste could include hazardous wastes.

*See* Notice of Claim. Furthermore, Plaintiff sufficiently provided the time, place, and manner in

which the claim arose:

> [A]pproximately 1.22 acres in the northeast portion of the [George
> Street] Property was historically utilized as a municipal dump, first
> by the City in about the 1960s and early 1970s, and then by the
> County in the 1970s . . . in conjunction with operations of the
> adjacent dump. The claims continue to accrue, since municipal
> waste is still currently located on the [George Street Property].

*See id.*

In his proposed amended complaint, Plaintiff alleges that he served the Notice within 90

days after the claim arose, as § 50-e requires. *See* Amended Complaint at ¶ 32. Although

Plaintiff must ultimately show that he did not have knowledge of contaminants on the George

Street Property prior to May 28, 2009, i.e., 90 days before he served the Notice of Claim, this

timeliness determination requires a more developed record. As alleged, Plaintiff timely served a

Notice of Claim on the County Defendant.[6]

Although it was not improper for Plaintiff to leave out his federal statutory claims in his Notice of Claim, Plaintiff failed to sufficiently notify the County Defendant of several of his state-law claims.  "[I]n a federal court, state notice-of-claim statutes apply to *state*-law claims." *Hardy v. N.Y.C. Health & Hosps. Corp.*, 164 F.3d 789, 793 (2d Cir. 1999) (citations omitted). The state-law claims  to which Plaintiff did not specifically refer in the Notice were (1) ECL Article 37, (2) strict liability for ultrahazardous activity, (3) restitution, (4) New York Navigation Law § 181(5), and (5) New York Navigation Law § 176(8).  New York County Law § 52 applies to *any* claim for damages against a county, not just tort claims; thus, Plaintiff was required to notify the County Defendant of each of his state-law claims.[7]  *See Rice v. Wayne Cnty.*, No. 09-CV-6391T, 2010 WL 4861556, *4-*5 (W.D.N.Y. Nov. 30, 2010); *Crippen v. Town of Hempstead*, No. 07-CV-3478, 2009 WL 803117, *15 (E.D.N.Y. Mar. 25, 2009).  "Notice of claim requirements 'are construed strictly by New York state courts,'" and a "[f]ailure to comply with these requirements ordinally requires a dismissal for failure to state a cause of action." *Hardy*, 164 F.3d at 793-94 (quotation and other citations omitted).

Accordingly, the County Defendant's motion to dismiss Plaintiff's third (ECL Article 37),

---

[6] Of course, if discovery reveals that this Notice of Claim was untimely or otherwise deficient, the County Defendant is free to reassert this defense.

[7] Unlike § 52 of the New York County Law, § 50-e of the New York General Municipal Law provides that only state-law causes of action sounding in tort are subject to the Notice of Claim requirements.  *See, e.g.*, *Rowe v. NYCPD*, 85 A.D.3d 1001, 1002 (2d Dep't 2011) (citing N.Y. Gen. Mun. Law § 50-e(1)(a)); *Brennan v. Albany Cnty.*, No. 00-CV-01985, 2005 WL 2437026, *6 (N.D.N.Y. Sept. 30, 2005) (citations omitted).  Accordingly, as to the City Defendant, the only state-law cause of action sounding in tort not specifically identified in Plaintiff's Notice of Claim is Plaintiff's common law claim for strict liability for ultrahazardous activity.

fifth (strict liability), seventh (restitution), tenth (Navigation Law § 181(5)), and eleventh (Navigation Law § 176(8)) causes of action is granted for failure to include these state-law claims in Plaintiff's Notice of Claim.[8]  Finally, for the above-stated reasons, the Court grants Plaintiff's motion for leave to file and serve an amended complaint consistent with this Memorandum-Decision and Order.

### B.    Defendant's motion to dismiss the complaint for lack of subject matter jurisdiction

As stated, the County Defendant has moved to dismiss Plaintiff's claims pursuant to Rule 12(b)(1).  Plaintiff bears the burden of establishing subject matter jurisdiction by a preponderance of the evidence; and, "before a federal court can consider the merits of a legal claim, the person seeking to invoke the jurisdiction of the court must establish the requisite standing to sue." *Whitmore v. Arkansas*, 495 U.S. 149, 154 (1990); *see also Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).  Unlike a Rule 12(b)(6) motion, when considering a Rule 12(b)(1) motion to dismiss, the court "may consider affidavits and other materials beyond the pleadings to resolve the jurisdictional issue, but [it] may not rely on conclusory or hearsay statements contained in the affidavits."  *J.S. ex rel. N.S. v. Attica Cent. Schs.*, 386 F.3d 107, 110 (2d Cir. 2004) (citations omitted); *see also Makarova*, 201 F.3d at 113 (citation omitted).

Although courts are free to treat a motion to dismiss for lack of subject matter jurisdiction

---

[8] With regard to Plaintiff's fifth cause of action for strict liability for ultrahazardous activity, even if the Court were to find that Plaintiff's Notice of Claim provided facts sufficient to enable the County Defendant to investigate this claim (which it does not), the Court would dismiss this cause of action on independent grounds because Plaintiff failed to state a plausible claim for common law strict liability.  Likewise, with regard to Plaintiff's restitution claim, even if the Court were to find that Plaintiff's Notice of Claim provided facts sufficient to enable the County Defendant to investigate this claim (which it does not), this claim too would fail on independent grounds.

as solely a motion to dismiss for failure to state a claim, thereby precluding the court's consideration of affidavits and other materials outside the pleadings, the Court need not do so in this case because the County Defendant's lack-of-subject-matter-jurisdiction argument is not unreasonable.  The County Defendant has submitted affidavits to support its argument that Plaintiff lacks standing to sue.

To establish standing, a plaintiff must show that (1) he has suffered an injury-in-fact, (2) the defendant's complained-of conduct caused the injury-in-fact, and (3) it is likely that the relief requested will redress his injury.  *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102-03 (1998) (quotations and other citations omitted).  Taking the affidavits into consideration for purposes of the County Defendant's jurisdictional challenge, the affidavits[9] assert that Plaintiff cannot show any causal connection between the County Defendant's ownership of the Landfill and his alleged injury.[10]

---

[9] The affidavits assert that the County Defendant acquired ownership of the Landfill in 1975, after which it built a Transfer Station on the premises to accept construction and demolition debris.  *See* Affidavit of Mark Powell dated January 13, 2011, at ¶¶ 5-6.  Further, "[t]he Transfer Station does not, and never has, accepted industrial waste, medical wastes, pesticides and/or other hazardous wastes, knowingly or willingly."  *See id.* at ¶ 8.  The Transfer Station "is a solid waste management facility where solid waste is received for the purpose of subsequent transfer to another off-site solid waste management facility for further processing, treatment, transfer or disposal."  *See id.* at ¶ 10.  Waste is not stored on the premises or at the Transfer Station, except for the used oil which is put into a storage tank and removed from the premises once to twice a month, and "to [the affiant's] knowledge, during the County[] [Defendant's] operation of the Transfer Station, there have been no spills of petroleum or discharges of hazardous waste into or on the premises and/or the Landfill."  *See id.* at ¶ 13.

[10] "Under CERCLA, traditional causation principles are 'relaxed' such that the party seeking costs need not show that a specific [potentially responsible party's] waste caused the incurrence of cleanup costs."  *DVL, Inc. v. Gen. Elec. Co.*, No. 1:07-CV-1075, 2010 WL 5067620, *12 (N.D.N.Y. Dec. 6, 2010) (citing *Niagara Mohawk*, 596 F.3d at 130).  Indeed, "'[w]hat is not required is that the [moving party] . . . show that a specific defendant's waste

(continued...)

Contrary to the County Defendant's affidavits, Plaintiff alleges that the County Defendant is the current owner of the Landfill, which it acquired from NiMo in or around 1975, and that approximately 1.22 acres of the George Street Property had been used as a portion of the Landfill "during the 1960s and 1970s and wastes were dumped there."  *See* Amended Complaint at ¶¶ 18-22, 44-45.  Plaintiff further alleges that discharges, spills, releases, and the disposal of various contaminants at the Landfill caused the contamination of the George Street Property.  *See id.* at ¶¶ 3, 23-28.

Given "the liberal threshold applied to standing challenges in the context of environmental citizen suits," *Solvent Chem. Co. v. E.I. Dupont De Nemours & Co.*, 242 F. Supp. 2d 196, 218 (W.D.N.Y. 2002) (citations omitted), the Court finds that there is a sufficient nexus for causation purposes between the County Defendant's ownership of the Landfill and Plaintiff's alleged injury to withstand a motion to dismiss.[11]  Whether Plaintiff's claims may ultimately be fairly attributed to the County Defendant is better reserved for a motion for summary judgment should such a motion prove to be appropriate following discovery.

For these reasons, the Court denies the County Defendant's motion to dismiss on the basis of a lack of subject matter jurisdiction.

_____

[10](...continued)
caused incurrence of cleanup costs.'"  *Id.* (quotation omitted).  "CERCLA thus 'relaxes' but does not eliminate the causation requirement: a plaintiff need not show a causal link between that particular waste and the response costs the plaintiff incurred, but it must demonstrate that a defendant deposited hazardous waste at the site in question."  *Id.* (citations omitted).

[11] As is further discussed below, potentially responsible parties under CERCLA include (1) present owners and operators of facilities with hazardous substances, (2) past owners and operators of facilities with hazardous substances, (3) generators of hazardous substances, and (4) transporters of hazardous substances.  *See* 42 U.S.C. § 9607(a).

**C.      Defendant's motion to dismiss for failure to state a claim**

Rule 8(a)(2) requires that a pleading contain "a short and plain statement of the claim

showing that the pleader is entitled to relief[.]"  Fed. R. Civ. P. 8(a)(2).  This pleading standard

does not require "detailed factual allegations," but it does require "more than labels and

conclusions, and a formulaic recitation of the elements of a cause of action . . . ."  *Bell Atl. Corp.*

*v. Twombly*, 550 U.S 544, 555 (2007) (citation omitted).  The complaint must tender more than

mere "'naked assertion[s]' devoid of 'further factual enhancement.'"  *Ashcroft v. Iqbal*, 556 U.S.

662, ---, 129 S. Ct. 1937, 1949 (2009) (quoting [*Twombly*, 550 U.S.] at 557, 127 S. Ct. 1955).

To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain

sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

*Id.* (quotation omitted).  A court must draw all reasonable inferences in favor of the nonmoving

party.  *See Gorman v. Consol. Edison Corp.*, 488 F.3d 586, 591-92 (2d Cir. 2007) (citation

omitted).

Finally, "on a motion to dismiss unrelated to subject matter jurisdiction, the court may

only consider the pleading itself, documents that are referenced in the complaint, documents that

the plaintiff relied on in bringing suit . . . and matters of which judicial notice may be taken."

*New York v. West Side Corp.*, 790 F. Supp. 2d 13, 18 (E.D.N.Y. 2011) (citations omitted).

### *1. First cause of action: Strict liability under CERCLA § 107*

The County Defendant contends that Plaintiff cannot maintain a CERCLA cause of action

against it because it is not a covered person and it is exempt.  *See* County Defendant's

Memorandum of Law at 10-12.  It further contends that Plaintiff's CERCLA claim is barred by

-11-

the applicable statute of limitations, conditions precedent,[12] (i.e., filing a Notice of Claim), and

the doctrine of laches.  Pursuant to CERCLA § 107(a), 42 U.S.C. § 9607, Plaintiff, on the other

hand, contends that the County Defendant is strictly liable for the investigation, cleanup,

remediation, and removal of the contamination of the George Street Property.  *See* Amended

Complaint at ¶¶ 43-48.

### a. Statute of Limitations/Timeliness

CERCLA § 309, 42 U.S.C. § 9658, provides that a plaintiff's claim accrues when "the

plaintiff knew (or reasonably should have known) that the personal injury or property damages

. . . were caused or contributed to by the hazardous substance or pollutant or contaminant

concerned."  42 U.S.C. § 9658(b)(4)(A).  The statute of limitation begins to run upon accrual.

"The applicable statute of limitations under CERCLA varies depending on whether

response costs were incurred in connection with a removal or remedial action."  *Syms v. Olin*

*Corp.*, 408 F.3d 95, 101-02 (2d Cir. 2005).  Generally, "removal includes efforts to clean up a

site, prevent the threatened release of hazardous substances, and dispose of removed material,"

while a remedial action involves "more permanent efforts to store, confine, recycle, or destroy

hazardous substances."  *Id.* at 101 (citations and footnotes omitted).  The limitations period for

"the recovery of costs related to 'removal actions' is three years after the completion of the

removal action, CERCLA § 113(g)(2)(A), while the limitations period for the recovery of costs

related to 'remedial actions' is six years after the initiation of physical on-site construction of the

remediation, *id.* § 113(g)(2)(B)."  *Schaefer v. Town of Victor*, 457 F.3d 188, 195 (2d Cir. 2006)

---

[12] As discussed *supra*, Plaintiff was not required to include his federal statutory claims in
the Notice of Claim he served on the County Defendant; thus, this defense fails.

(footnote omitted).

Here, Plaintiff's response costs appear to involve both removal and remedial actions. Regardless, Plaintiff alleges that he did not know about the wastes on his property or incur any response costs until 2009; accordingly, assuming discovery of the harm "caused or contributed to by the hazardous substance or pollutant or contaminant" in 2009, Plaintiff's claim is timely under the three- or six-year statute of limitations.  In addition, the date on which Plaintiff knew or should have known that the hazardous substances damaged his property is an issue of fact. Therefore, the Court denies the County Defendant's motion to dismiss Plaintiff's CERCLA claim on statute-of-limitations grounds.

The County Defendant also argues that Plaintiff's CERCLA claim is barred by the doctrine of laches.  A party asserting the equitable defense of laches must establish that "'(1) the plaintiff knew of defendant's misconduct; (2) the plaintiff inexcusably delayed in taking action; and (3) the defendant was prejudiced by the delay.'"  *Natural Res. Def. Council, Inc. v. U.S. Army Corps of Eng'rs*, 399 F. Supp. 2d 386, 402 (S.D.N.Y. 2005) (quoting *Ikelionwu v. United States*, 150 F.3d 233, 237 (2d Cir. 1998)).

In its laches defense, the County Defendant argues that Plaintiff knew about the alleged dumping of wastes and/or contamination of the George Street Property as early as the 1950s and unreasonably delayed in bringing suit.  *See* County Defendant's Memorandum of Law at 7-8. However, even assuming that Plaintiff knew of the County Defendant's alleged misconduct and inexcusably delayed in taking action, the record does not establish that the County Defendant was prejudiced by any such delay.  In addition, any determination of prejudice to the County Defendant as a result of Plaintiff's delay in bringing suit is a fact-based inquiry, which is

inappropriate for judgment on a motion to dismiss.  Finally, "laches is 'only rarely invoked in environmental cases.'"  *City of Newburgh v. Sarna*, 690 F. Supp. 2d 136, 172 (S.D.N.Y. 2010) (quotation omitted).  Accordingly, the County Defendant's laches defense is similarly unavailing.

In sum, therefore, accepting the facts pled as true and drawing all reasonable inferences in Plaintiff's favor, the Court concludes that the County Defendant's statute-of-limitations, conditions precedent, and laches defenses do not support dismissal at this stage.  Accordingly, the Court denies the County Defendant's motion to dismiss on these grounds.

### b. CERCLA liability

CERCLA is a broad remedial statute that should be construed liberally to give effect to its purposes.  *See B.F. Goodrich v. Betkoski*, 99 F.3d 505, 514 (2d Cir. 1996) (quotation and other citations omitted).  It establishes "'a regime of broad-ranging liability, permitting the government to recover its remediation expenses directly from parties responsible for pollution and authorizing private parties to pursue contribution or indemnification from potentially responsible parties for expenses incurred responding to environmental threats.'"  *Schaefer*, 457 F.3d at 194 (quotation omitted).  Section 107 permits government agencies and certain private parties "to seek reimbursement for all removal and remedial costs associated with the hazardous materials on the property . . . ."  *Niagara Mohawk Power Corp. v. Chevron U.S.A., Inc.*, 596 F.3d 112, 121 (2d Cir. 2010) (citation and footnote omitted).

A prima facie CERCLA claim requires the plaintiff to show that

> (1) [the] defendant fits one of the four classes of responsible parties
> outlined in § 9607(a); (2) the site is a facility; (3) there is a release
> or threatened release of hazardous substances at the facility; (4) the
> plaintiff incurred costs responding to the release or threatened

release; and (5) the costs and response actions conform to the
National Contingency Plan set up under the Act and administered
by the EPA in order to prioritize hazardous substance release sites
throughout the nation.

*B.F. Goodrich Co. v. Murtha*, 958 F.2d 1192, 1198 (2d Cir. 1992) (citation omitted).

### *(1). Potentially responsible party*

With regard to the first element, potentially responsible parties ("PRPs") include (1)

present owners and operators of facilities with hazardous substances, (2) past owners and

operators of facilities with hazardous substances, (3) generators of hazardous substances, and (4)

transporters of hazardous substances. *See* 42 U.S.C. § 9607(a).  CERCLA's "broad reach extends

liability to all those contributing to – from generation through disposal – the problems caused by

hazardous substances." *Murtha*, 958 F.2d at 1198.  These PRPs may be held strictly liable for a

broad range of remediation expenses, including the removal costs, response costs, damages for

injury to natural resources, and health assessment costs. *See Betkoski*, 99 F.3d at 514 (citing 42

U.S.C. § 9607(a)(4)).  Plaintiff contends that the County Defendant qualifies as a PRP under any

of the first three categories set forth above.

Since Plaintiff alleges that the County Defendant is the current owner of the Landfill, *see*

Amended Complaint at ¶ 44, it is a PRP under § 9607(a), even if it did not own the Landfill at

the time of the alleged disposal of hazardous substances on the George Street Property.[13]

Accordingly, as alleged, the County Defendant may be held strictly liable unless it can satisfy a

defense precluding liability, of which the County Defendant has raised three: (1) it is a sovereign

---

[13] In addition, Plaintiff alleges that the County Defendant was an operator of the Facility
at the time of the release of hazardous substances onto the George Street Property.  *See* Amended
Complaint at ¶ 45.  This would also qualify it is a PRP.

municipality; (2) it is entitled to a third-party defense; and (3) it is entitled to a contiguous

ownership defense.

### (i). Sovereign municipality defense

The County Defendant contends that it cannot be held liable as a sovereign municipality.

Although a municipality may generally be a PRP, CERCLA has carved out a limited exception

where, as an owner or operator, the municipality "acquires ownership or control of a facility

involuntarily as a result of its sovereign function" or "acts in response to an emergency

caused by the release of hazardous substances from a facility owned by another party and does

not act with gross negligence or willful misconduct . . . ." *Murtha*, 958 F.2d at 1199 (citations

omitted).  Plaintiff alleges that the County Defendant "acquired" the Landfill from NiMo in or

around 1975; it continues to own and/or operate the Landfill as a transfer station for municipal

waste materials and construction and demolition debris; and it is currently accepting metals, used

oil, and dried paint.  *See* Amended Complaint at ¶¶ 16-22.  Construed in the light most favorable

to Plaintiff, these allegations tend to show that the County Defendant did not obtain title to the

Landfill involuntarily.  In addition, as an affirmative defense, the County Defendant will have the

burden of proof.  Accordingly, since discovery is needed to determine whether the County

Defendant is entitled to this defense, the Court Denies the County Defendant's motion to dismiss

on the basis of a sovereign municipality defense at this time.

### (ii). Third-party defense

CERCLA's "third-party defense" essentially provides that a PRP is not liable if the release

or threatened release of hazardous substances was caused solely by an act or omission of a third

party.  *See* 42 U.S.C. § 9607(b)(3).  At this stage of the litigation, the County Defendant is not entitled to a third-party defense because, in the absence of discovery, it cannot affirmatively show (1) that the injury was caused solely by the act or omission of a third party, or that (2) its acquisition of the Landfill does not constitute a contractual relationship with the third party, or that (3) it exercised due care with respect to the hazardous substances concerned and that it took precautions against foreseeable acts or omissions of any such third party.  *See id.*

### (iii). Contiguous property ownership defense

Finally, in a single sentence, "for the same reasons" as the prior defenses raised, the County Defendant attempts to assert a defense concerning contiguous property ownership pursuant to CERCLA § 107(q), 42 U.S.C. § 9607(q).  Section § 107(q) provides an exemption from PRP-status for

> [a] person that owns real property that is contiguous to or otherwise similarly situated with respect to, and that is or may be contaminated by a release or threatened release of a hazardous substance from, real property that is not owned by that person shall not be considered to be an owner or operator . . . .

42 U.S.C.  § 9607(q).  However, given the facts of the instant case, § 107(q) is inapposite simply because this case does not involve a contiguous owner situation.  Regardless, discovery is needed to determine whether this defense is warranted, and the Court has not found any cases in which it has been used to preclude liability.  Thus, this defense also fails to preclude liability.

For these reasons, at this juncture, the Court concludes that Plaintiff has alleged sufficient facts, which, taken as true, would indicate that the County Defendant is a PRP under CERCLA § 107(a)(1).

*(2). Facility*

The second necessary element of a prima facie case of CERCLA liability is that

the site must be a "facility."  CERCLA § 101(9), 42 U.S.C. § 9601(9), defines a facility to

include "(A) any building, structure, installation, equipment, pipe or pipeline . . . , well, pit, pond,

lagoon, impoundment, ditch, landfill . . . or (B) any site or area where a hazardous substance has

been deposited, stored, disposed of, or placed, or otherwise came to be located . . . ."  42 U.S.C.

§ 9601(9).  Given this broad definition, both the Landfill and the George Street Property appear

to be facilities for purposes of the statute.

*(3). Release or threatened release of hazardous substances*

Third, there must be a release or threatened release of "hazardous substances" at the

facility.  *See* 42 U.S.C. § 9607(a)(4).  CERCLA defines a hazardous substance as "any substance

so designated by the EPA pursuant to § 9602 or by any of four other environmental statutes."

*Murtha*, 958 F.2d at 1199.  Non-hazardous wastes may contain hazardous substances, as

defined in CERCLA.  Ultimately, Plaintiff must prove that the construction and demolition

material at issue contains hazardous substances to succeed on the merits of his CERCLA claim;

however, at this stage, it is sufficient that Plaintiff has pled that the County Defendant disposed

of wastes containing hazardous substances while the County Defendant owned the Landfill.  The

actual quantity or concentration of the hazardous substances is not important.  Accordingly, the

Court shall allow Plaintiff the opportunity to discover the potential presence of "hazardous

substances" within the construction and demolition material.  In any event, what this material

actually consists of and whether or not it constitutes a hazardous substance involves questions of

fact that cannot be decided at this early stage of the proceedings.

### (4). Plaintiff incurred costs

Fourth, the plaintiff must have incurred costs in responding to the release or threatened release.  *See* 42 U.S.C. 9607(a)(4).  Here, Plaintiff alleges in his proposed amended complaint that the contamination occurred as a direct, proximate, and natural consequence of the releases; as a result, the value of the George Street Property has diminished, Plaintiff has undertaken environmental investigation and response actions, and it will be necessary for Plaintiff to incur additional costs due to the contamination and the presence of wastes on the Property.  *See* Amended Complaint at ¶¶ 28, 30, 47.  As stated, these allegations are sufficient to withstand a motion to dismiss.

### (5). The costs conform to the National Contingency Plan

The fifth and final element necessary for a prima facie case of CERCLA liability is that the costs incurred conform to the National Contingency Plan ("NCP").  42 U.S.C. § 9607(a)(4)(A) & (B).  Whether Plaintiff's spending conforms to the NCP requires a more developed record; it is sufficient that Plaintiff has alleged in his proposed amended complaint that he "has incurred response costs in connection with the Contamination, all of which have been consistent with the National Contingency Plan, and are recoverable pursuant to CERCLA . . . ."  *See* Amended Complaint at ¶ 47; *see also Commerce Holding Co., Inc. v. Buckstone*, 749 F. Supp. 441, 444 (E.D.N.Y. 1990).

In sum, Plaintiff has alleged facts plausibly suggesting a prima facie case of CERCLA liability.  Moreover, the issue of whether response costs were actually caused by hazardous

substances released from the Landfill as a result of the County Defendant's actions, as well as the issue of whether the costs were necessary and consistent with the NCP, involves questions of fact that cannot be decided at this early stage of the proceedings. Therefore, the Court denies the County Defendant's motion to dismiss Plaintiff's first cause of action under CERCLA.

### 2. Second cause of action: RCRA § 7002(a)(1)(B)

RCRA contains three citizen suit provisions, under which an individual may commence a civil action on his own behalf. *See* 42 U.S.C. §§ 6972(a)(1)(A), 6972(a)(1)(B), 6972(a)(2). Here, Plaintiff is relying on § 6972(a)(1)(B), which allows him to bring a civil action against

> any person, including the United States and any other governmental instrumentality or agency, to the extent permitted by the eleventh amendment to the Constitution, and including any past or present generator, past or present transporter, or past or present owner or operator of a treatment, storage, or disposal facility, who has contributed or who is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment . . . .

42 U.S.C. § 6972(a)(1)(B).

As a preliminary matter, similar to the notice provision contained in CERCLA, prior to bringing a RCRA citizen suit, the moving party must first notify the Administrator of the citizen's intent to initiate the litigation. *See* 42 U.S.C. §§ 6972(b)(1), (b)(2), (c). In suits under § 6972(a)(1)(B), as in this case, notice must be given to "the State in which the alleged endangerment may occur," and to "any person alleged to have contributed or to be contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste referred to in subsection (a)(1)(B)[.]" 42 U.S.C. §§ 6972(b)(2)(A)(ii), (iii). In

addition to the notice requirement, citizen plaintiffs must satisfy a delay requirement by waiting

ninety days after they provide such notice before commencing suit under this section.

In the instant case, on March 17, 2010, Plaintiff notified the County Defendant of his

intent to bring a citizen's suit under RCRA by way of registered mail; and he also sent copies to

the DEC Commissioner, the EPA Administrator, and the EPA Region 2 Administrator.  *See* Dkt.

19-2, Motion to Dismiss, Exh. C letter attached thereto.  Further, Plaintiff waited more than 90

days after he gave notice before commencing this action.  *See id.*  Therefore, Plaintiff has

satisfied both the notice and delay requirements.

A prima facie cause of action under 42 U.S.C. § 6972(a)(1)(B) requires a RCRA plaintiff

to establish the following:

> "(1) the defendant was or is a generator or transporter of solid or
> hazardous waste or owner or operator of a solid or hazardous waste
> treatment, storage or disposal facility, (2) the defendant has
> contributed or is contributing to the handling, storage, treatment,
> transportation, or disposal of solid or hazardous waste, as defined
> by RCRA, and (3) [] the solid or hazardous waste in question may
> pose an imminent and substantial endangerment to health or the
> environment."

*Murtaugh v. New York*, No. 5:08-CV-1168, 2011 WL 3607180, *17 (N.D.N.Y. Aug. 16, 2011)

(quoting *Prisco v. A & D Carting Corp.*, 168 F.3d 593, 608 (2d Cir. 1999)).

### a. The defendant was or is a generator or transporter of solid or hazardous waste or owner or operator of a solid or hazardous waste treatment, storage or disposal facility

With regard to the first prima facie element that a RCRA plaintiff must ultimately prove

to prevail under § 6972(a)(1)(B), a "citizen suit seeking to abate an imminent and substantial

hazard may be predicated either upon 'solid *or* hazardous' waste."  *Aiello v. Town of Brookhaven*,

-21-

136 F. Supp. 2d 81, 103 (E.D.N.Y. 2001) (quoting 42 U.S.C. § 6972(a)(1)(B)).  This is

significant because hazardous wastes are a subset of solid wastes; thus, all hazardous wastes are

solid wastes, but not all solid wastes are hazardous wastes.  *See id.* (quotation and other citations

omitted).  RCRA defines "solid waste" as "any garbage, refuse, sludge . . . and other discarded

material, including solid, liquid, semisolid, or contained gaseous material resulting from

industrial, commercial, mining, and agricultural operations, and from community activities[.]"

42 U.S.C. § 6903(27).  "Hazardous waste" is defined as

> a solid waste, or combination of solid wastes, which because of its
> quantity, concentration, or physical, chemical, or infections
> characteristics may–
>
> (A) cause, or significantly contribute to an increase in mortality or
> an increase in serious irreversible, or incapacitating reversible,
> illness; or
>
> (B) pose a substantial present or potential hazard to human health
> or the environment when improperly treated, stored, transported, or
> disposed of, or otherwise managed.

42 U.S.C. § 6903(5); *see also Aiello*, 136 F. Supp. 2d at 103 (quotation omitted).

      In this case, Plaintiff alleges that the County Defendant "contributed to the past handling"

of "hazardous or solid waste" and that the contaminants released at the George Street Property

included hazardous substances.  *See* Amended Complaint at ¶¶ 50-51.  Here, the construction and

demolition material at issue is almost certainly a "solid waste" under RCRA, and it may or may

not constitute a "hazardous waste."  As stated, however, a citizen suit seeking to abate an

imminent and substantial endangerment may be predicated either upon solid *or* hazardous waste.

Accordingly, Plaintiff has sufficiently pled that the material at issue constitutes "solid or

hazardous waste" for purposes of the motion to dismiss.

Plaintiff further alleges that the County Defendant is the past and/or present owner or operator of a solid waste management facility (namely, the Transfer Station at the Landfill) since it acquired the Facility in approximately 1975, and that it continues to own the George Street Property. *See* Amended Complaint at ¶¶ 18-22, 44, 51. Accordingly, Plaintiff has sufficiently pled the first prima facie element of his RCRA claim.

### b. The defendant has contributed or is contributing to the handling, storage, treatment, transportation, or disposal of solid or hazardous waste, as defined by RCRA

Although RCRA does not define "contributed to," courts in this Circuit "resort to the basic principle that an undefined statutory phrase must be given its 'ordinary and natural meaning.'" *Aiello*, 136 F. Supp. 2d at 111 (quotation omitted). In keeping with the liberal construction afforded to RCRA as a remedial statute, "'relevant legislative history supports a broad, rather than a narrow, construction of the phrase "contributed to."'" *Id.* at 112 (quotation and other citations omitted). Other courts have held that it requires some degree of active human involvement. *See, e.g., Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*, 263 F. Supp. 2d 796, 844 (D.N.J. 2003) (citations omitted). Liberally construed, whether the County Defendant's conduct actually constituted active human involvement with the disposal of waste is a question of fact, and discovery is required to make this determination.

### c. The solid or hazardous waste in question may pose an imminent and substantial endangerment to health or the environment

The third and final prima facie element that a RCRA plaintiff must show is that the solid or hazardous waste in question may pose an imminent and substantial endangerment to health or the environment. 42 U.S.C. § 6972(a)(1)(B)(3). To constitute an "imminent and substantial

endangerment," there need not be "a showing that actual harm will occur immediately so long as the risk of threatened harm is present" and such a finding does not require "actual harm." *Dague v. City of Burlington*, 935 F.2d 1343, 1356 (2d Cir. 1991) (citations omitted).

Here, the County Defendant argues that there is no ongoing violation due to the fact that contaminants allegedly infiltrating the George Street Property between 1975 and 1993 simply amount to a past activity; as such, it falls outside the scope of RCRA liability.  This argument, however, is misguided.  The County Defendant is apparently relying solely on RCRA § 6972(a)(1)(A), which allows for the private enforcement of ongoing violations, whereas Plaintiff is bringing suit pursuant to § 6972(a)(1)(B).  Unlike RCRA § 6972(a)(1)(A), § 6972(a)(1)(B) allows a plaintiff to bring a civil action against any "**past or present** owner or operator . . . who **has contributed or who is contributing** to the **past or present** handling, storage, treatment, transportation, or disposal of any solid or hazardous waste which **may** present an imminent and substantial endangerment to health or the environment . . . ."  42 U.S.C. § 6972(a)(1)(B) (emphasis added).  The statutory language is clear in that "the endangerment must be ongoing, but the conduct that created the endangerment need not be." *Connecticut Coastal Fishermen's Ass'n v. Remington Arms Co., Inc.*, 989 F.2d 1305, 1316 (2d Cir. 1993).  Indeed, Plaintiff has alleged that the endangerment is ongoing, even if the conduct that created the endangerment is not.  *See* Amended Complaint at ¶¶ 24-26, 50-51.

Accordingly, Plaintiff has adequately alleged the existence of contaminants and potentially hazardous substances emanating from the George Street Property and the Landfill, which very well may pose an imminent and substantial endangerment to health and the environment.

For all of these reasons, the Court denies the County Defendant's motion to dismiss Plaintiff's RCRA claim.

### 3. Third cause of action: ECL Article 37

As discussed, the Court grants the County Defendant's motion to dismiss this claim as against the County Defendant because Plaintiff failed to include this state-law cause of action in his Notice of Claim.  In addition, the Court *sua sponte* dismisses this cause of action with respect to the City Defendant and the John Doe Defendants because the weight of authority in New York supports a determination that no such private cause of action exists.  *See Coon v. Willet Dairy, LP*, Nos. 5:02-CV-1195, 5:04-CV-917, 2007 WL 2071746, *7 (N.D.N.Y. July 17, 2007) (citing *Johnson v. Monsanto Chem. Co.*, 129 F. Supp. 2d 189, 195 n.1 (N.D.N.Y. 2001); *Nowak v. Madura*, 304 A.D.2d 733, 733 (2d Dep't 2003)).

In *Coon*, this Court previously held that ECL Article 71 governs the statute's enforcement and reserves enforcement rights to the New York State Department of Environmental Conservation and the State Attorney General; and, therefore, the ECL does not confer a private cause of action.  *See Coon*, 2007 WL 2071746, at *7 (citations omitted).  Accordingly, because Plaintiff cannot maintain a private cause of action under the ECL, the Court dismisses Plaintiff's third cause of action against all Defendants in its entirety.

**4. Fourth, Sixth, Eighth, and Ninth causes of action: Negligence, Public Nuisance, Trespass, and Private Nuisance[14]**

As to each of these causes of action, the County Defendant contends that the claims are untimely, preempted, duplicative, and insufficiently pled.

**a. Timeliness of the common law claims**

Pursuant to New York Civil Practice Law and Rules ("C.P.L.R.") § 214-c(2), claims brought under common law theories of negligence, trespass, and public and private nuisance are time-barred if filed more than three years after the "date of discovery of the injury by the plaintiff or . . . the date when through the exercise of reasonable diligence such injury should have been discovered by the plaintiff, whichever is earlier." N.Y. C.P.L.R. § 214-c(2). This date of discovery rule applies only to claims for damages, which means it is inapplicable to claims seeking injunctive relief. *See Bano v. Union Carbide Corp.*, 361 F.3d 696, 710 (2d Cir. 2004) (citations omitted).

In this case, Plaintiff contends that he did not know about the wastes on his property or incur any response costs until 2009; accordingly, his common law tort claims are timely assuming discovery of the harm in 2009. Even if Plaintiff knew or should have known about the County Defendant's alleged wrongdoing earlier, this is an issue of fact about which the Court would benefit from discovery. Indeed, "it is well-established that a statute of limitations defense may only be resolved on a pre-answer motion to dismiss where the complaint alleges specific

_____

[14] In the County Defendant's memorandum of law in support of its motion to dismiss, it combines these causes of action based on negligence, public nuisance, trespass, and private nuisance into one section. Thus, the majority of its arguments in support of its motion to dismiss applies equally to each of these claims.

information to permit such a finding." *West Side Corp.*, 790 F. Supp. 2d at 28 (citing *Ghartey v. St. John's Queens Hosp.*, 869 F.2d 160, 162 (2d Cir. 1989)).  Accordingly, construing the allegations in the amended complaint in the light most favorable to Plaintiff, the Court denies the County Defendant's motion to dismiss the common law tort claims as untimely.

### b. Preemption and the bar to double recovery

A plaintiff is expressly preempted from bringing supplemental state-law claims along with his CERCLA claim if doing so would permit him to recover twice under CERCLA and other state or federal laws.  *See* CERCLA § 114(b), 42 U.S.C. § 9614(b); *see also Bedford Affiliates v. Sills*, 156 F.3d 416, 426 (2d Cir. 1998) (citation omitted).  Accordingly, the County Defendant contends that the Court should dismiss Plaintiff's state-law claims as duplicative.  However, Plaintiff concedes that he cannot recover twice for the same response costs under CERCLA and New York State law.  It is conceivable that discovery will reveal that Plaintiff's potential for recovery under CERCLA is unavailable because of, for instance, his failure to comply with the statute of limitations.  Furthermore, by his own concession, Plaintiff is not hoping for a windfall, but only a single recovery under CERCLA or, if unavailable, New York State law.  The record does not establish that recovery would be identical under Plaintiff's CERCLA and state-law claims; and, even assuming *arguendo* that the recovery would be identical, the possibility still exists that Plaintiff would ultimately be unable to recover under CERCLA.  Accordingly, "it would seem imprudent to dismiss state law claims outright on Rule 12 because of a mere ***potential*** for double recovery." *West Side Corp.*,790 F. Supp. 2d at 26 (citing [*Hickey's Carting*, 380 F. Supp. 2d] at 115).

Therefore, at this juncture, the mere potential for double recovery is insufficient to trigger preemption of Plaintiff's state-law claims; accordingly, the Court denies the County Defendant's motion to dismiss on this ground.

### c. Fourth cause of action: Negligence

Under New York law, a prima facie negligence claim requires a plaintiff to establish (1) a duty that the defendant owes to the plaintiff, (2) a breach of that duty, and (3) injury proximately resulting therefrom. *See S-P Assocs., LP v. United Cleaners & Launderers, Inc.*, No. 07-CV-6515, 2011 WL 4344058, *6 (W.D.N.Y. Sept. 14, 2011) (quotation and other citation omitted). In addition, "a plaintiff must show that the defendant either created a dangerous condition, or had actual or constructive notice of a dangerous condition." *Id.* (citing *Samuels v. Marriott Int'l, Inc.*, 86 Fed. Appx. 453, 455 (2d Cir. 2004)). In *S-P Associates*, the court held that the defendants created a dangerous condition when they released hazardous waste onto the plaintiff's property. *See id.*

In the instant case, Plaintiff alleges that the County Defendant owed him a duty of care with regard to its operation of the Landfill. *See* Amended Complaint at ¶ 58. Plaintiff further alleges that the County Defendant breached that duty by "causing the Releases, the Contamination and the dumping of Wastes on the Trespass Area, or failing to take reasonable precautions necessary to avoid the Releases . . . and those acts and omissions were the direct and proximate cause of the damages to plaintiff." *See id.* at ¶ 59.

Therefore, the Court denies the County Defendant's motion to dismiss Plaintiff's fourth cause of action for negligence because the facts, as alleged, support a plausible negligence claim.

### d. Sixth cause of action: Public Nuisance

A public nuisance "'is an offense against the State' . . . and 'consists of conduct or omissions which offend, interfere with or cause damage to the public in the exercise of rights common to all . . . in a manner such as to . . . endanger or injure the property, health, safety or comfort of a considerable number of persons.'"  *State of N.Y. v. Shore Realty Corp.*, 759 F.2d 1032, 1050 (2d Cir. 1985) (quotation and other citation omitted).  The release or threatened release of hazardous waste into the environment constitutes an unreasonable interference with a public right, thereby making it a public nuisance as a matter of New York law.  *See West Side Corp.*, 790 F. Supp. 2d at 29 (quotation and other citation omitted).  Further, a private party may bring a public nuisance claim only if it is shown that he has suffered a "special injury beyond that suffered by the community at large . . . ."  *532 Madison Ave. Gourmet Foods, Inc. v. Finlandia Ctr., Inc.*, 96 N.Y.2d 280, 292 (2001) (citation omitted).

Here, Plaintiff simply alleges that, by causing the contamination, the County Defendant interfered with the rights common to all, "including ground and surface waters," and that he has sustained special damages as a result of this public nuisance.  *See* Amended Complaint at ¶¶ 66-67.  Even construed in the light most favorable to Plaintiff, there is nothing in the amended complaint that would allow the Court to make a determination that enough people were affected by this groundwater contamination for it to qualify as a public nuisance.  In addition, the Court *sua sponte* dismisses this cause of action with respect to the City Defendant and the John Doe Defendants because Plaintiff has not plausibly pled a public nuisance cause of action.  Accordingly, the Court dismisses Plaintiff's sixth cause of action against all Defendants in its entirety.

### e. Eighth cause of action: Trespass

A trespass is "the intentional invasion of another's property." *Scribner v. Summers*, 84 F.3d 554, 557 (2d Cir. 1996) (citations omitted).  To be liable for intentional trespass to land, the alleged trespasser must (1) intend the act which amounts to or produces the unlawful invasion, and (2) the intrusion must be the immediate or inevitable consequence of that act.  *See Phillips v. Sun Oil Co.*, 307 N.Y. 328, 331 (1954) (citations omitted).  "To constitute such a trespass, the act done must be such as 'will to a substantial certainty result in the entry of the foreign matter.'"  *Id.* (quotation omitted).

Plaintiff alleges that the County Defendant "intentionally placed the Wastes on the Trespass Area on the [George Street] Property . . . [and] interfered with the rights of plaintiff to exclusive possession of the property, and threaten[s] to do so in the future."  *See* Amended Complaint at ¶¶ 73-74.  The County Defendant apparently argues that this invasion constitutes a continuing trespass, stating: "A continuing trespass may ripen into a prescriptive right and deprive a property owner of title to his or her land . . . where there was adverse, open and notorious, and continued and uninterrupted use of the area for a period of 10 years and such use need not be exclusive."  *See* County Defendant's Memorandum of Law at 18.

Whether the County Defendant intended the act which amounts to or produces the alleged unlawful invasion (here, the ownership and maintenance of a waste management facility) appears clear; however, whether this amounts to willful behavior substantially certain to result in the entry of contaminants onto the George Street Property presents a material issue of fact.  In addition, the County Defendant's passing reference that it obtained a prescriptive easement in the George Street Property by virtue of the continuing trespass of contaminants on the Property — a

-30-

curious argument for someone in the County Defendant's position to make — is another issue of fact best left for discovery.

"[W]hen 'polluting material has been deliberately put onto, or into, defendant's land,' the defendant is liable for damage to his neighbor's land if the defendant 'had good reason to know or expect that subterranean and other conditions were such that there would be passage from defendant's to plaintiff's land.'" *Abbatiello v. Monsanto Co.*, 522 F. Supp. 2d 524, 542 (S.D.N.Y. 2007) (quoting *Phillips*, 121 N.E.2d at 251). Here, Plaintiff alleges that the County Defendant is liable for trespass both to the extent it dumped waste directly onto the George Street Property and because the migration of the contaminants from the Landfill to the Property was inevitable and foreseeable. *See* Amended Complaint at ¶¶ 24-26. This allegation is sufficient to withstand a motion to dismiss; and, accordingly, the Court denies the County Defendant's motion to dismiss Plaintiff's trespass claim.

### f. Ninth cause of action: Private Nuisance

To make out a private nuisance claim under New York law, a plaintiff must establish that the conduct at issue "is a legal cause of the invasion of the interest in the private use and enjoyment of land and such invasion is (1) intentional and unreasonable, (2) negligent or reckless, or (3) actionable under the rules governing liability for abnormally dangerous conditions or activities[.]" *Copart Indus., Inc. v. Consol. Edison Co. of New York, Inc.*, 41 N.Y.2d 564, 569 (1977) (citations omitted). Next, relevant here, "[t]he elements of a private nuisance cause of action, premised on an intentional and unreasonable invasion, are: '(1) an interference substantial in nature, (2) intentional in origin, (3) unreasonable in character, (4) with

a person's property right to use and enjoy land, (5) caused by another's conduct in acting or failure to act.'" *Scribner*, 84 F.3d at 559 (quoting [*Copart Indus.*, 41 N.Y.2d] at 570, 394 N.Y.S. 2d 169, 362 N.E.2d 968).

In this case, Plaintiff alleges that the County Defendant caused an unreasonable and substantial interference with his right to use and enjoy the George Street Property. *See* Amended Complaint at ¶ 77. If true, the allegations in the amended complaint regarding the County Defendant's alleged conduct and its effects plausibly amounts to a private nuisance. Again, however, without discovery, it is not possible to ascertain the extent of the interference to Plaintiff's property rights; and, thus, since any determination regarding the extent of interference is a fact-based inquiry, it is inappropriate for judgment on a motion to dismiss. Therefore, the Court denies the County Defendant's motion to dismiss Plaintiff's ninth cause of action for private nuisance.

### IV. CONCLUSION

Accordingly, having reviewed the entire record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that the County Defendant's motion to dismiss is **GRANTED** with respect to Plaintiff's third, fifth, sixth, seventh, tenth, and eleventh causes of action and **DENIED** in all other respects; and the Court further

**ORDERS** that Plaintiff's third cause of action, pursuant to New York ECL Article 37, and sixth cause of action, alleging public nuisance, are *sua sponte* **DISMISSED** as to the City Defendant and the John Doe Defendants; and the Court further

ORDERS that Plaintiff's motion for leave to file an amended complaint is **GRANTED**;[15]

and the Court further

ORDERS that Plaintiff shall file and serve his amended complaint within ten (10) days

of the date of this Memorandum-Decision and Order; and the Court further

ORDERS that this matter is referred to Magistrate Judge Baxter for all further pretrial

matters.

**IT IS SO ORDERED.**


Dated: December 13, 2011
      Syracuse, New York


_____
Frederick J. Scullin, Jr.
Senior United States District Court Judge

---

[15] Any amended complaint that Plaintiff files must be consistent with this Memorandum-Decision and Order.